# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# SOUTHERN DIVISION

## NO. 7:13-CV-81-FL

| | |
|---|---|
| ANDREW GENTILE, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) ORDER AND |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| JOHN INGRAM, et al., | ) |
| | ) |
| Defendants. | ) |

This matter comes before this court on the following motions: (1) Defendants' Motion for Extension of Time to Conduct Discovery [DE-101], (2) Defendants' Amended Motion for Extension of Time to Conduct Discovery [DE-107], and (3) Defendants' Motion for Sanctions [DE-109]. Plaintiffs timely submitted a brief in response to Defendants' motion to extend time [DE-105] and Defendants' motion for sanctions [DE-114], to which Defendants have replied [DE-118], and the court held a telephonic hearing on the amended motion in which counsel for the parties participated. Because Defendants' motion for sanctions [DE-109] seeks dispositive relief, the motion is considered here as a recommendation to the District Court in accordance with 28 U.S.C. § 636(b)(1)(B). All other motions are considered by the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A). The matters raised in the pending motions are ripe for decision. For the reasons stated below, Defendants' motions for extension of time are denied as moot and it is recommended that the motion for sanctions be allowed in part and denied in part.

## I. PROCEDURAL BACKGROUND

Plaintiffs originally filed this action in Brunswick County Superior Court and the matter was removed to this court on April 25, 2013. [DE-1]. The claims asserted in this case arise from the

arrest of Plaintiff Andrew Gentile on state charges for receipt of stolen goods on January 15, 2013, following the execution of a search warrant at the Red Gator Pawn Shop ("Red Gator"), an establishment owned by Plaintiffs. [DE-1-1]. Plaintiffs initially alleged federal claims under 42 U.S.C. § 1983 for violation of their Constitutional right to due process, equal protection, and to be free from unlawful searches and seizures and under 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as state law claims for false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress. *Id.* On May 21, 2013, the court granted a motion to stay discovery and other pretrial proceedings pending the resolution of several motions to dismiss. May 21, 2013 Text Order. In its order, the court dismissed with prejudice claims against Defendants Brunswick County District Attorney's Office and Assistant District Attorney Meredith Everhart ("Everhart") in her official capacity. *Id.* On April 2, 2014, the court dismissed the following additional claims: the civil RICO claim against Everhart in her individual capacity, the civil RICO claim against Defendants Murray, Newman, and Ingram, and all claims against Defendants Brunswick County Sheriff's Department and Brunswick County. [DE-65].

On April 24, 2014, the court entered its case management order ("CMO"). [DE-68]. Pursuant to the CMO, the parties were required to make their initial disclosures by May 24, 2014, discovery was to be completed by January 1, 2015, supplementation of initial disclosures was to be served by November 21, 2014, and dispositive motions were to be filed by February 1, 2015. *Id.* On June 2, 2014, with leave of court, Plaintiffs filed an amended complaint [DE-73], which Defendants answered on June 9, 2014 [DE-74]. Plaintiffs amended the complaint to include factual allegations regarding the dismissal of a criminal charge against Andrew Gentile, which is alleged

2

to have occurred subsequent to the filing of the original complaint. Pls.' Mot. for Leave to Am. [DE-69] at 2; Am. Compl. [DE-73] ¶¶ 164-69. Plaintiffs also added a claim for malicious prosecution based in part on the additional alleged facts pertaining to the dismissal of the criminal charges against Andrew Gentile. Pls.' Mot. for Leave to Am. [DE-69] at 3; Am. Compl. [DE-73] ¶¶ 221-34.

On January 2, 2015, upon joint motion, the court extended the discovery deadline to March 2, 2015 and the dispositive motions deadline to April 2, 2015. [DE-79]. On February 12, 2015, the court stayed proceedings in the case pending resolution of Plaintiffs' motion to disqualify Defendants' counsel. [DE-80]; Feb. 12, 2015 Text Order. On August 20, 2015, the court denied the motion to disqualify counsel, Aug. 20, 2015 Text Order, and on September 9, 2015, entered an amended CMO [DE-97]. Pursuant to the amended CMO, the parties were directed to complete remaining discovery by November 15, 2015, supplementation under Rule 26(e) was due within 30 days of learning of new information that is the subject of supplementation, and dispositive motions were to be filed by December 15, 2015. Am. CMO [DE-97] ¶¶ 1, 1.b, 2.a.

On November 9, 2015, prior to the close of discovery, Defendants moved pursuant to Rule 37(c) of the Federal Rules of Civil Procedure to extend the discovery deadline by thirty days to allow Defendants to address information that Defendants contend was withheld from discovery, to extend the dispositive motions deadline, and if necessary to reopen the deposition of Amber Galloway ("Galloway"), an apparent witness.[1] [DE-101]. Plaintiffs filed a timely response to the motion. [DE-105]. Discovery closed on November 15, 2015. [DE-97]. According to Plaintiffs, they served

---

[1] The parties have also referred to Amber Galloway by her former name, Amber Holden.

their supplemental responses to Defendants' written discovery requests on November 12, 2015.[2] Pls.' Resp. [DE-114] at 4 n.3. Defendants received the supplemental responses on November 17, 2015, and on November 20, 2015, filed an amended motion pursuant to Rule 37 to conduct discovery in light of additional materials received after the discovery period had ended. [DE-107]. On November 24, 2015, the court held a telephonic hearing at which counsel for the parties appeared and participated, during which the court discussed issues pertinent to deciding the pending motions. On November 30, 2015, prior to the court's ruling on Defendants' pending Rule 37 motions, and after having further reviewed Plaintiffs' supplemental responses, Defendants filed a third motion pursuant to Rule 37. [DE-109]. In their third motion, Defendants alternatively request that the court: (1) dismiss this action as a sanction for Plaintiffs' failure to disclose recorded interviews of material witnesses during discovery; (2) strike Galloway and Austin Jenkins ("Jenkins") as witnesses and disallow their statements and deposition testimony from use during the summary judgment phase of the proceedings and at trial; or (3) allow an additional 60 days to conduct discovery, in which the parties may re-open the Plaintiffs' depositions and the depositions of Galloway and Jenkins, and extend the dispositive motion deadline 30 days from the end of the amended discovery period. *Id.* Defendants also seek costs and attorney's fees associated with filing the motion for sanctions and the reopening of the depositions. *Id.*

## II. FACTS RELEVANT TO THE PENDING MOTIONS

According to incident reports from the Brunswick County Sheriff's Office ("BCSO"), on

---

[2] In response to Defendants' first motion, Plaintiffs assert they served the supplemental discovery responses on November 10, 2015, Pls.' Resp. [DE-105] ¶ 31, but in their later response to Defendants' motion for sanctions, Plaintiffs indicate the supplementation was served on November 12, Pls.' Resp. [DE-114] at 4 n.3. Whether it was November 10 or 12 appears to make no material difference, and for consistency the court will use November 12 as the operative date going forward.

4

August 22, 2012, Regina Jenkins ("Ms. Jenkins") filed a report with the BCSO that three rings had been stolen from her home.[3] Incident/Investigation Report, Ex. A. [DE-93] at 5. Ms. Jenkins said she suspected her son Austin Jenkins had been taking items from her home for a while and selling them at pawn shops. *Id.* She visited pawn shops and advised them not to accept items from her son because he did not own any jewelry. *Id.* at 6. Ms. Jenkins confronted her son about the stolen rings and Jenkins told her that the jewelry had been stolen by his girlfriend, Galloway, and that Galloway had sold the jewelry at the Red Gator. *Id.* at 5, 6. Ms. Jenkins visited the Red Gator to recover the rings and was told that the rings had been pawned by a female but had since been "sent off." *Id.* On September 6, 2012, Jenkins and Galloway were interviewed by Detectives Newman and Murray of the BCSO. *Id.* at 6. Jenkins told officers that he had taken several pieces of jewelry from his mother and given them to Galloway to pawn. *Id.* Galloway admitted being at Jenkins' residence while Jenkins stole the jewelry. *Id.* Galloway said she and Jenkins went to the Red Gator and Andrew Gentile told Jenkins that he could not take any items from him. *Id.* Jenkins said he then exited the pawn shop with Galloway and gave her the rings to pawn. *Id.* Galloway said she walked back inside the Red Gator and Andrew Gentile gave her $100 for the rings. *Id.*

The report details that Detectives Newman and Murray visited Red Gator on August 25, 2012 and that Andrew Gentile stated he had two of the rings Galloway had pawned on August 22, but that one ring had been sold to a customer. *Id.* According to the report, Andrew Gentile, a former law enforcement officer, refused to allow officers to seize the rings because Ms. Jenkins' police report was not sufficiently descriptive of the items stolen. *Id.* Detectives then went back to Ms. Jenkins

---

[3]The Incident/Investigation Report is included as an exhibit to Galloway's declaration provided with Plaintiffs' motion to disqualify counsel. Incident/Investigation Report, Ex. A [DE-93] at 4-9.

and had her complete a signed statement listing the rings and her ownership. *Id.* Eventually, the two rings that had not been sold were returned to Ms. Jenkins. *Id.* at 6, 8. On September 4, 2012, when Detective Newman returned to the Red Gator to retrieve the items pawned by Galloway, Andrew Gentile "was given an OCA number for obtaining property by false pretenses." *Id.* at 6. Galloway and Jenkins each signed declarations disavowing statements contained in the incident report attributed to them and any actions implicating them. Decl. of Amber Holden [DE-93]; Decl. of Austin Jenkins [DE-94]. The declarations were produced to Defendants in discovery before Defendants deposed either Jenkins or Galloway. Pls.' Resp. [DE-105] ¶ 3, n.1.

Defendants took the depositions of Christine and Andrew Gentile on December 11 and 12, 2014, respectively, and they each testified regarding Galloway and Jenkins. Defs.' Mem. [DE-110] at 3. Defendants contend Galloway is a material witness because she pawned the stolen property to the Red Gator and Jenkins is a material witness because he stole the property that was the subject of Andrew Gentile's criminal charge for receipt of stolen property and attempted to pawn the property himself.[4] *Id.* Defendants deposed Galloway on November 3, 2015 and Jenkins on November 4, 2015. *Id.* at 3-4. On November 6, 2015, Plaintiffs' counsel Brad Hill told Defendants' counsel that a recorded interview of Galloway was being withheld during discovery, but that it would be produced. *Id.* The Galloway interview was conducted by a private investigator in January 2013 at the direction of Plaintiffs' criminal defense attorney, Richard Hollar, who is also Plaintiffs' counsel of record in this case. *Id.*; Pls.' Resp. [DE-114] at 3. Defendants filed their first motion for

---

[4] Plaintiffs and Defendants each contend a central issue in this case is whether Defendants had probable cause to search the Red Gator and whether Defendants had probable cause to arrest Andrew Gentile for receipt of stolen property. Defs.' Mem. [DE-110] at 3; Pls.' Resp. [DE-114] at 2.

6

an extension of time on November 9, 2015, after learning of the recorded interview with Galloway. [DE-101]. Plaintiffs served their supplemental discovery responses on November 12, 2015. Pls.' Resp. [DE-114] at 4 n.3. After receiving Plaintiffs' supplemental discovery responses on November 17, 2105, Defendants' counsel learned for the first time that Andrew Gentile had recorded conversations with Jenkins on three separate occasions, January 15 and 20, 2013 and February 27, 2013. Defs.' Mem. [DE-110] at 4.

Defendants filed their amended motion on November 20, 2015. [DE-107]. Defendants contend that in addition to Galloway's recorded interview, Plaintiffs produced several surveillance videos from the Red Gator that had not previously been disclosed. *Id.* at 1, 3-5. Defendants' motion for sanctions was filed on November 30, 2015. [DE-110]. According to the motion, Defendants were unaware of any recorded interviews of Jenkins until Defendants received Plaintiffs' supplemental discovery responses on November 17, 2015, the index of supplemental discovery responses produced by Plaintiffs led Defendants to believe that the recordings of Jenkins visits to the Red Gator were video recordings, and it was not until Defendants reviewed the twenty files contained on a compact disc that they realized the recordings were audio recordings between Jenkins and Andrew Gentile. *Id.* at 6.

When Plaintiffs served their Rule 26(a)(1) initial disclosures on June 20, 2014, they did not disclose the existence of any recorded interviews with Jenkins or Galloway.[5] Defs.' Mem. [DE-110] at 4. On October 27, 2014, Defendants served their Third Request for Production of Documents, to which Plaintiffs served responses on November 17, 2014. *Id.* at 5. Request No. 8 of Defendants'

---

[5] While Defendants have not provided copies of the discovery with their motions, Plaintiffs do not appear to dispute Defendants' description of the discovery requests or Plaintiffs' responses.

7

discovery requests sought the following material:

> A copy of all signed documents and/or statements by any person(s), including but not limited to, affidavits, declarations, reports or notes, in plaintiffs' or plaintiffs' counsels' possession that concern the allegations as set forth in plaintiffs' Amended Complaint. This includes, but is not limited to, the declarations of Amber Holden and Austin Jenkins that were executed on or about July 15, 2014.

*Id.* Plaintiffs responded without objection, but did not disclose the existence of any recorded interviews with Jenkins or Galloway. *Id.* On December 11, 2014, Defendants served their First Set of Interrogatories and Fourth Set of Requests for Production of Documents, to which Plaintiffs responded on August 28, 2015.[6] *Id.* Interrogatory No. 8 of Defendants' First Set of Interrogatories states as follows:

> State the name, address, and occupation of any and all persons who have given statements, whether written or recorded, concerning the incidents set out in the Complaint and provide the name and address of the person or entity now in possession of said statements.

*Id.* Plaintiffs responded without objection as follows:

> Written statements from Amber Holden, Austin Jenkins, and Charles Holden have already been provided by Plaintiffs. In addition to those statements, Larry Gentile, Susan Gentile, and Jerri Kay Shipplet (identified in Plaintiffs' Initial Disclosures) have produced written declarations in this matter, and they are provided herewith. It is further expected that Sarah Gavin, Clarke Speaks, and Garron Michael (also identified in Plaintiffs' Initial Disclosures) will produce written statements and they will be provided as they are received by Plaintiffs. Any additional statements, written or recorded, will be produced if and when they are received by Plaintiffs.

*Id.* Plaintiffs concede that the first time they disclosed Galloway's recorded interview was on November 6, 2015. Pls.' Resp. [DE-105] ¶ 31. Plaintiffs argue the recording qualifies as attorney work product, citing no authority for this proposition, and the recorded interview is likely

---

[6] The delay in responding was presumably attributable to the stay pending resolution of Plaintiffs' Motion to Disqualify Counsel.

inadmissible except for purposes of impeachment and is of little evidentiary value. *Id.* ¶¶ 31- 33,

35.[7] Plaintiffs, however, concede that the recorded interview may not be withheld at this time and

state that the recording was always intended to be part of the supplementation Plaintiffs served on

November 12, 2015. *Id.* ¶ 31.

## III. ANALYSIS

A.     Applicable Rules

Rule 26(a)(1) mandates that the parties make certain pre-discovery initial disclosures

including

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment; . . . .

Fed. R. Civ. P. 26(a)(1)(A)(i), (ii). Timely supplementation or correction of initial disclosures is

likewise required by Rule 26(e) when "the party learns that in some material respect the disclosure

or response is incomplete or incorrect, and if the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in writing [.]" Fed.

R. Civ. P. 26(e)(1)(A). Rule 26(e) encompass circumstances where new information regarding the

subject of an initial disclosure is learned through discovery. *See Carmody v. Kansas City Bd. of*

*Police Comm'rs*, 713 F.3d 401, 404-05 (8th Cir. 2013); *S. States Rack and Fixture, Inc. v. Sherwin-*

---

[7] Plaintiffs' response to Defendants' first motion refers to security video footage from the Red Gator on the day the relevant search warrant was executed, material which also appears to have been produced in supplementation. Pls.' Resp. [DE-105] at 9 n.7. Plaintiffs note this material may in fact have evidentiary value beyond impeachment. *Id.* Plaintiffs describe difficulties encountered in securing this material and, perhaps forecasting a future dispute, contend they should be excused for any delay in producing this material. *Id.*

9

*Williams Co.*, 318 F.3d 592, 595-96 (4th Cir. 2003) (Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony when the party learns of new information.).

Rule 26(b)(1) provides the general rule regarding the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV00889, 2007 WL 1726560, at \*3 (M.D.N.C. June 13, 2007) (unpublished) (internal quotation marks, alterations, and citations omitted).

Rule 37(c)(1) provides in relevant part that

[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(B)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1)(A)-(C). The language of Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is "substantial[ly] justifi[ed]," and (2) when the nondisclosure is "harmless." *S. States*, 318 F.3d at 596. In exercising its broad discretion to determine whether nondisclosure of evidence is substantially justified or harmless for purposes of the Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the

10

party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Id.* at 597. The district court is "not required to tick through" each of these factors, but rather retains its "broad discretion" to decide harmlessness. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (citing *S. States*, 318 F.3d at 597). "While Rule 37(c)(1) requires the nondisclosure to be 'without substantial justification' and harmful, neither of these requirements suggests that the nondisclosing party must act in bad faith or otherwise culpably." *S. States*, 318 F.3d at 596. Indeed, "excluding evidence only when the nondisclosing party acted in bad faith would undermine the basic purpose of Rule 37(c)(1): preventing surprise and prejudice to the opposing party[.]" *Id.* (citations omitted). The burden of establishing these factors lies with the nondisclosing party. *Id.* ("It is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with Rule 37(c)(1) was either justified or harmless.") (alterations omitted) (quoting *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001)).

## B.    First Motion [DE-101] & Amended Motion [DE-107]

Defendants filed their first motion for extension of time to conduct discovery on the grounds that Plaintiffs failed to disclose Galloway's recorded interview either in Plaintiffs' initial disclosures or in response to Defendants' written discovery requests. Defs.' Mem. [DE-102] at 4-6. Defendants argue that even if Plaintiffs intended to withhold the material on the basis of privilege or as trial preparation materials, they were required by Rule 26(b)(5) to explicitly make such claims and to describe the materials in lieu of production. *Id.* at 4. Nonetheless, Defendants dispute the material is protected by the work-product doctrine. *Id.* According to Defendants, because Plaintiffs failed

11

to properly disclose the recorded interview, Plaintiffs have deprived Defendants the opportunity to challenge any claim of privilege through a motion to compel or to fully examine Galloway during her deposition. *Id.* at 5. Defendants seek additional time to file dispositive motions and conduct discovery, including the reopening of Galloway's deposition if necessary after Defendants have reviewed the recorded interview. *Id.*

For their part, Plaintiffs concede that the first disclosure of Galloway's interview was on November 6, 2015. Pls.' Resp. [DE-105] ¶ 31. While Plaintiffs believe Galloway's recording qualifies as work product, they contend that the recording was always intended to be part of their supplementation served on November 12, 2015. *Id.* Plaintiffs also assert that the recorded interview would likely be inadmissible except for impeachment or rebuttal. *Id.* ¶ 32. Plaintiffs contend that Galloway's deposition and declaration mirror statements in her recorded interview, believe it is unnecessary to reopen her deposition, and insist that Defendants be required to offer new or compelling evidence worthy of further examination. *Id.* ¶¶ 32-33.

Defendants' amended motion was filed after Defendants reviewed Plaintiffs' supplemental discovery responses. Defs.' Am. Mot. [DE-107] at 1-2. According to Defendants, in addition to Galloway's recorded interview, Plaintiffs produced several previously unknown surveillance videos from the Red Gator. *Id.* at 1, 3-5. Many of these were later determined to be audio recordings of Jenkins, which are the subject of Defendants' third motion. Defs.' Mem. [DE-110] at 6. At the hearing, Plaintiffs disputed the relevance of the recordings. Plaintiffs explained it was not until later in the discovery period that they learned they were able to obtain the security camera footage. Plaintiffs' counsel described the laborious process of obtaining the recordings from storage and being unable to simply copy the footage but having to record the recordings. Plaintiffs appeared to

12

concede these materials should have been disclosed earlier but noted they were timely included in supplementation. Plaintiffs' counsel advised the court he planned to obtain copies of the recordings and make them available to Defendants.

The issues raised in the first motion and amended motion have been subsumed by Defendants' subsequently-filed motion for sanctions [DE-109], and the earlier motions [DE-101, -107] are, accordingly, DENIED AS MOOT.

## C.    Motion for Sanctions [DE-109]

Defendants seek dismissal of Plaintiffs' action as a sanction against Plaintiffs for the willful failure to disclose the recorded interviews of Galloway and Jenkins during discovery. Defs.' Mem. [DE-110] at 1. Alternatively, Defendants request the court strike Galloway and Jenkins as witnesses and disallow the use of any of their previous statements and deposition testimony during the summary judgment phase of the proceedings or during the trial of this matter. *Id.* at 1-2. Should the court find a lesser sanction appropriate, Defendants seek an additional 60 days to conduct discovery, an extension of the dispositive motions deadline, the reopening of the depositions of Plaintiffs, Galloway, and Jenkins, and attorney's fees associated with the filing of the motion and all attorney's fees and costs associated with reopening the depositions. *Id.* at 2. Defendants argue Plaintiffs failed to provide a privilege log as required by Rule 26(b)(5) and that Plaintiffs' discovery responses led Defendants to believe that all responsive materials had been produced. *Id.* at 14. Defendants argue that Plaintiffs' willful failure to disclose the existence of several recorded interviews has prejudiced Defendants' ability to fully examine Plaintiffs, Galloway, and Jenkins at their depositions, and the discovery violations at issue are magnified by the fact that Defendants were already compelled to bring this issue to the court's attention in two separate motions. *Id.* at 17-18.

13

In response, Plaintiffs incorporate their earlier arguments and respond further that their supplemental disclosures were in fact timely and that Plaintiffs have fully and timely responded to Defendants discovery requests. Pls.' Resp. [DE-114] at 9. Plaintiffs assert that there are no grounds to support dismissal of this action as there is no evidence of bad faith or any prejudice to Defendants where Defendants knew of Galloway and Jenkins and had the opportunity to interview them. *Id.* at 10-14. Any further discovery, according to Plaintiffs, would be unreasonably cumulative or duplicative. *Id.* at 15, 20. Finally, Plaintiffs argue that an award of fees would be unjust where Defendants failed to attempt in good faith to resolve the issues presented prior to bringing the motion and did not make the requisite certification under Local Civil Rule 7.1(c)(2). *Id.* at 21-22.

1. Amber Galloway and Austin Jenkins

Assuming, without deciding, that Galloway's January 2013 recorded interview and Jenkins' recorded statements of January 15 and 20 and February 27, 2013[8] were not subject to Plaintiffs' initial disclosures under Rule 26(a), these statements are responsive to Defendants' written discovery to which Plaintiffs responded in August 2015, and in which Plaintiffs in fact advised Defendants that any responsive statements—whether written or recorded—would be provided upon receipt. Defs.' Mem. [DE-110] at 5. In fact, the implication of Plaintiffs' response is that Plaintiffs had no responsive information at the time other than that which had already been produced.

Plaintiffs contend that the existence of Galloway's interview was disclosed in their complaint and amended complaint through allegations, but that Defendants failed to ask any substantive questions about it during Galloway's deposition. Pls.' Resp. [DE-105] at 8; Pls.' Resp. [DE-114]

---

[8] The court has not been provided with the recorded statements of either Galloway or Jenkins and is left to rely on the parties' respective descriptions of the recordings.

14

at 3-4. Nonetheless, Plaintiffs concede they did not disclose the existence of a recording of the interview until November 6, 2015, and first provided a copy of the recording when they served supplementations to Defendants' discovery requests on November 12, 2015. Pls.' Resp. [DE-114] at 4. To the extent Plaintiffs argue Galloway's recorded statement is protected by the work-product doctrine, Plaintiffs have failed to carry their burden in demonstrating a privilege applies, irrespective of whether Plaintiffs have waived any argument by failing to assert privilege in compliance with Rule 26(b)(5) in their initial discovery responses. Indeed, Plaintiffs appear to concede that the recording should have been disclosed. To the extent Plaintiffs argue the material would not likely be admissible, the rules of evidence do not control the scope of discovery where Rule 26 expressly states that " information within th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Nonetheless, Plaintiffs' assertion that the recording was always intended to be part of their supplementation belies any argument that the material is not discoverable. Finally, although Plaintiffs appear to have supplemented their discovery before the conclusion of discovery, the recording should have been produced well before that time, where the amended CMO provided that supplementation was due 30 days after learning of the new information. Am. CMO [DE-97] ¶ 1.b. Plaintiffs do not argue the material was newly discovered, but rather that they always intended it to be part of their supplementation. Accordingly, it is clear that Plaintiffs failed to timely disclose Galloway's recorded statements to Defendants, and the court finds no substantial justification for Plaintiffs' failure.

With respect to Jenkins' recorded statements, Plaintiffs make no argument that the recordings are not properly within the scope of discovery, nor do Plaintiffs demonstrate that the recordings are newly-discovered evidence or that there are other grounds upon which they were appropriately

15

withheld until supplementation. Rather, Plaintiffs argue Defendants have suffered no prejudice with respect to the timing of the disclosure of the recordings of Jenkins' conversation with Andrew Gentile. Pls.' Resp. [DE-114] at 7. The court disagrees that this justifies the non-disclosure of discoverable materials. Accordingly, the court finds that Plaintiffs failed to timely disclose Jenkins' recorded statements to Defendants and there was no substantial justification for Plaintiffs' failure.

The court further concludes Plaintiffs' non-disclosure of Galloway's and Jenkins' statements was not harmless. Defendants contend there are inconsistencies between Galloway's declaration statements, deposition testimony, and statements made during her recorded interview. Defs.' Mem. [DE-110] at 6-8. Those inconsistencies appear to concern the following: (1) the basis of Galloway's knowledge that Detective Newman turned off a tape recorder during his interview of Galloway in January 2013; (2) the occasions on which Galloway discussed the Red Gator with Detectives Murray and Newman; and (3) the occasions on which Jenkins went to the Red Gator and Pawn USA. *Id.* Defendants contend that without Galloway's recorded statements, they were unable to question Galloway at her deposition about these inconsistencies.[9] *Id.* Plaintiffs respond that the alleged inconsistency is either nonmaterial or explained by subsequent testimony, and Defendants simply chose not to explore these issue in Galloway's deposition. Pls.' Resp. [DE-114] at 15-18.

Defendants also assert the recorded conversations between Jenkins and Andrew Gentile concern Jenkins' dealings with the Red Gator and Andrew Gentile, including discussion of the circumstances on the day Galloway supposedly pawned Ms. Jenkins' rings at the Red Gator after Jenkins attempted to do so himself. Defs.' Mem. [DE-110] at 8-10. The recordings also are asserted

---

[9] No mention of the tape recording is contained in Galloway's July 23, 2014 declaration which Defendants had been provided before the deposition. Galloway Decl. [DE-93].

to touch upon Detective Newman turning off a tape recorder during his interview of Jenkins in which Detective Newman said he was out to "shut down" the Red Gator. *Id.* Jenkins' July 15, 2014 declaration, does not contain any statements regarding any previous conversations with Andrew Gentile, Jenkins Decl. [DE-94], and Defendants contend they were limited in their deposition of Jenkins not having previously been provided the recordings of Jenkins and Andrew Gentile, Defs.' Mem. [DE-110] at 10. Plaintiffs argue that statements regarding Jenkins' conversation with Andrew Gentile are contained in the allegations of the complaint and amended complaint and that Jenkins himself testified he had spoken to Andrew Gentile multiple times. Pls.' Resp. [DE-114] at 18-20. Plaintiffs argue Defendants failed to explore the status of the tape recorder with Jenkins at his deposition, even though they were aware that Jenkins was present at the same interview about which Galloway had testified, that Defendants had Jenkins' declaration which contained substantial testimony about his recollection of the conversation with the Shallotte Police Department, and that Defendants were in possession of Galloway's statements about Detective Newman indicating he wanted to "shut down" the Red Gator. *Id.* at 19-20.

Reopening the depositions of Galloway and Jenkins for the limited purpose of addressing the contents of the recorded statements is an appropriate alternative to either dismissal of this action or the exclusion of Galloway's and Jenkins' testimony or of them as witnesses, both of which the court finds to be unduly severe sanctions under the circumstances presented. The court is guided by the factors other courts have weighed in similar analyses. *Wilkins*, 751 F.3d at 222. Here, the surprise to Defendants may be cured through limited depositions, which will not disrupt the trial where no trial date has yet been set. Although the importance of the evidence as described by the moving party appears to be somewhat narrowly related to Galloway's and Jenkins' credibility, the court is not

17

persuaded by Plaintiffs' arguments of unimportance and concludes Defendants are entitled to explore the issues raised with Galloway and Jenkins through limited depositions. Accordingly, it is recommended that Defendants be allowed to redepose Galloway and Jenkins for the limited purpose of addressing the contents of their recorded statements and issues related thereto. It is further recommended that the depositions be taken in a location in or within close proximity to Brunswick County, or the county in which the witnesses reside, to minimize the inconvenience of a second deposition to these non-party witnesses.

## 2. Andrew and Christine Gentile

Defendants argue that the prejudice from Plaintiffs' failure to disclose the existence of recorded interviews with Jenkins is most apparent when it comes to the depositions of Andrew and Christine Gentile. In particular, Defendants did not have the opportunity to examine Andrew Gentile about his motivation for recording Jenkins' interviews or about their substance. According to Defendants, the same holds true for Christine Gentile, who was present and spoke during the January 15, 2013 recorded interview of Jenkins. Defs.' Mem. [DE-110] at 10-11. Plaintiffs argue that reopening their depositions is unnecessary and that Plaintiffs' discovery responses were produced in response to discovery requests that were not due until after the Plaintiffs' depositions in mid-December 2014. Plaintiffs argue that to the extent Defendants claim they were unable to ask the Plaintiffs about the content of the conversations and interviews with Jenkins and Galloway, this was solely the fault of the Defendants, as these conversations were disclosed in the Plaintiffs' Complaint, [DE-1-1] ¶¶ 168-169, and Amended Complaint, [DE-73] ¶¶ 161-162. Pls.' Resp. [DE-114] at 20-21. According to Plaintiffs, Christine Gentile does not have any role in the recordings and appears on the January 15, 2013 recording only briefly and in a manner that has little to do with the content.

18

*Id.* Plaintiffs argue further that neither was present for the Galloway interview and it is clear from that recording that the interview occurred at the behest of Richard Hollar, one of the Plaintiffs' attorneys. *Id.* at 21. Finally, Plaintiffs argue that the motivations behind the recordings are irrelevant. *Id.*

The court agrees with Defendants in part and finds that reopening the deposition of Andrew Gentile is warranted for the limited purpose of examining him regarding the recorded interviews with Jenkins on the dates described herein. The proffered grounds for reopening Andrew Gentile's deposition—his motivation in recording Jenkins—is within the broad scope of discovery. Moreover, Plaintiffs have failed to articulate sufficient grounds that would otherwise properly limit the scope of discovery, i.e., that reopening of the deposition is unreasonably cumulative, duplicative, or that the information sought is available from other less burdensome or more convenient sources. *See* Fed. R. Civ. P. 26(b)(2)(C). It is clear that Plaintiffs' failure to disclose Jenkins' recorded statements prior to supplementation deprived Defendants of the opportunity to obtain information properly discoverable and Defendants are entitled to explore these issues through a limited deposition with Andrew Gentile. However, with respect to Christine Gentile, the reason proffered by Defendants for reopening her deposition—that she was present and spoke during one of the Jenkins' interviews—is not compelling, where there is no indication she had any material involvement in the interview. Accordingly, it is recommended that Defendants be allowed to redepose Andrew Gentile for the limited purpose of addressing the contents of Galloway's and Jenkins' recorded statements and issues related thereto.

It is further recommended that discovery be reopened for 45 days for the limited purpose of taking these depositions and that the dispositive motions deadline be reset for 30 days following the

19

Case 7:13-cv-00081-FL   Document 119   Filed 04/29/16   Page 19 of 22

conclusion of the extended discovery period.

### 3. Attorney's Fees and Costs

Finally, pursuant to Rule 37(c) and the court's inherent power, Defendants seek costs and attorney's fees associated with the filing of the motion for sanctions and the reopened depositions. Defs.' Mem. [DE-110] at 16-19. Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), . . . the court . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). The court may impose fees and expenses "[i]n addition to or instead of" other sanctions. Fed. R. Civ. P. 37(c)(1). "Beyond courts' power to sanction under the Rules, federal courts also have the inherent power to impose sanctions on parties who abuse the judicial process." *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). "However, where the Federal Rules of Civil Procedure already provide for adequate sanctions, courts should first rely on the Rules before exercising their inherent powers." *Id.* Here, Plaintiffs failed to timely disclose the recorded statements of two witnesses resulting in a need to reopen three depositions. The undersigned recommends as a sanction, in addition to allowing the depositions of Galloway, Jenkins, and Andrew Gentile to be reopened, that Plaintiffs bear the costs of those depositions, not to include Defendants' attorney's fees. In declining to recommend an award of attorney's fees related to the reopened depositions or to the filing of the motion for sanctions, it is significant that Defendants failed to certify that they attempted to resolve the issues presented here prior to filing the motion. *See* Local Civil Rule 7.1(c)(2) ("Counsel must also certify that there has been a good faith effort to resolve discovery disputes prior to the filing of any discovery motions."); 7.1(c)(1) (defining a "discovery motion" as "any motion or other request

20

to the court that seeks to enforce . . . any of the procedures in any of Rules 26 through 37 of the Federal Rules of Civil Procedure . . . ."); *Lloyd v. New Hanover Reg'l Med. Ctr.*, No. 7:06-CV-130-D, 2009 WL 674394, at *1 (E.D.N.C. Mar. 11, 2009) (unpublished) (holding the meet and confer requirement is not merely technical and promotes the orderly resolution of discovery disputes).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Extension of Time to Conduct Discovery [DE-101] and Defendants' Amended Motion for Extension of Time to Conduct Discovery [DE-107] are DENIED AS MOOT and it is RECOMMENDED that Defendants' Motion for Sanctions [DE-109] be ALLOWED IN PART and DENIED IN PART.

IT IS DIRECTED that a copy of this Memorandum and Recommendation (M&R) be served on each of the parties or, if represented, their counsel. Each party shall have until **May 13, 2016** to file written objections to the M&R. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the M&R to which objection is properly made and may accept, reject, or modify the determinations in the M&R; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b). Any response to objections shall be filed by within **10 days** of the filing of the objections.

**If a party does not file written objections to the M&R by the foregoing deadline, the party will be giving up the right to review of the M&R by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the M&R without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order**

21

**or judgment of the presiding district judge based on the M&R.** *See Wright v. Collins*, **766 F.2d**

**841, 846-47 (4th Cir. 1985).**

Ordered and submitted, the 29th day of April 2016.

Robert B. Jones, Jr.
United States Magistrate Judge